[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 279.]

VAIL, APPELLEE, *v*. THE PLAIN DEALER PUBLISHING COMPANY ET. AL.,
APPELLANTS.

[Cite as *Vail v. The Plain Dealer Publishing Co*., 1995-Ohio-187.]

*Defamation—When determining whether if speech is constitutionally protected opinion, court must consider totality of the circumstances.*

When determining whether speech is protected opinion a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. (*Scott v. News-Herald* [1986], 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699, approved and followed; Section 11, Article I of the Ohio Constitution, applied.)

(No. 93-1959—Submitted January 11, 1995—Decided May 31, 1995.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 63223.

———————————

{¶ 1} Appellee, Loren Loving Vail, instituted her action after appellant The Plain Dealer Publishing Company ("Plain Dealer") published a column authored by appellant Joe Dirck, concerning Vail's 1990 campaign for the Ohio Senate. Vail's complaint advanced causes of action sounding in defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Attached to and incorporated by reference in her complaint were a copy of the Dirck column and a copy of a press release issued by Vail's campaign office that allegedly prompted the column.

{¶ 2} The article appeared in the Forum section of the October 19, 1990 edition of The Plain Dealer. Immediately preceding the article, at the top of the column, appeared a picture of Dirck bearing his name and the caption

"Commentary." In the article, entitled "Gay-basher takes refuge in the closet," Dirck stated: "Loren Loving Vail doesn't like gay people" and that she "*** has added gay-bashing to the repertoire of right-wing, neo-numbskull tactics she is employing *** in her increasingly distasteful campaign against Democrat Eric Fingerhut." Dirck characterized Vail's comments concerning a speech given by Dagmar Celeste as an "anti-homosexual diatribe," and claimed that "Vail wouldn't be the first candidate to latch onto homophobia as a ticket to Columbus." Finally, Dirck ended his column by writing, "[h]aving learned long ago never to underestimate the neo-numbskull vote, I won't hazard a guess on whether her hate-mongering will work. But although I personally don't have much use for bigots of any sort, I have a particular problem with those who can't even be up front about it. Honesty, it would appear, is one value on which Vail is not so 'pro.'"

{¶ 3} Upon motion of Dirck and The Plain Dealer, the trial court dismissed the action for failure to state a claim. The court of appeals reversed, holding that the terms "gay-basher," "neo-numbskull," "bigot," "hate-mongering," and the inference of dishonesty cited in Vail's complaint were not actionable, but that Dirck's description of Vail as "dislik[ing] homosexuals," of "engag[ing] in an 'anti-homosexual diatribe,'" and of "foster[ing] homophobia" in an attempt to be elected did state actionable claims of defamation and intentional infliction of emotional distress. The court of appeals reasoned that because the statements were capable of being proven false, Vail had asserted a valid cause of action.

{¶ 4} The cause is now before this court pursuant to the allowance of a motion to certify the record.

————————————

*Baker & Hostetler, David L. Marburger* and *Beth A. Brandon*, for appellants.

————————————

**MOYER, C.J.**

2

**{¶ 5}** Our standard of review when presented with a motion to dismiss predicated on Civ. R. 12(B)(6) is well established. The factual allegations of the complaint and items properly incorporated therein must be accepted as true. Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. *Mitchell v. Lawson Milk Co*. (1988), 40 Ohio St.3d 190, 192, 532 N.E. 2d 753, 756. It must appear beyond doubt that plaintiff can prove no set of facts entitling her to relief. *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus. However, the determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court. *Scott v. News-Herald* (1986), 25 Ohio St. 3d 243, 250, 25 OBR 302, 308, 496 N.E.2d 699, 705.

**{¶ 6}** The issue in this case is whether the trial court properly dismissed Vail's complaint because the averred defamatory statements are constitutionally protected as opinion. The resolution of this question requires us to revisit our decision in *Scott v. News-Herald, supra*.

**{¶ 7}** Section 11, Article I of the Ohio Constitution provides in relevant part: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press." In *Scott* we stated in effect that expressions of opinion are generally protected under Section 11, Article I of the Ohio Constitution as a valid exercise of freedom of the press. *Scott v. News-Herald, supra,* at 244-245, 25 OBR at 303-304, 496 N.E.2d at 701-702. We held as constitutionally protected opinion, a columnist's inference that a school superintendent was less than truthful. Superintendent Scott was involved in the events that led to the imposition of sanctions against the school's wrestling team. The News Herald columnist insinuated that Scott lied at a subsequent hearing convened to determine whether the school was afforded due process prior to the suspension. Notwithstanding dicta stating the article was protected opinion under

the First Amendment to the United States Constitution, our holding was premised on Section 11, Article I of the Ohio Constitution. *Scott, supra*, at 244, 25 OBR at 303, 496 N.E.2d at 701.

{¶ **8**} Subsequent to our announcement in *Scott*, the United States Supreme Court decided the related case of *Milkovich v. Lorain Journal Co*. (1990), 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1. Milkovich, the wrestling team coach, was also involved in the due process hearing that generated the *Scott* case, *supra.* The column at issue in Scott also addressed Milkovich's alleged untruthfulness. The Supreme Court held that "opinion" is afforded no additional protection under the United States Constitution, *id*. at 21, 110 S.Ct. at 2707, 111 L.Ed.2d at 19, and that the actual malice standard of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, strikes the proper balance between freedom of the press and the protection of one's reputation as applied to public officials and public figures, *id.* at 14-17, 110 S.Ct. at 2703-2705, 111 L.Ed.2d at 14-17. The *Milkovich* court determined that the language was actionable because a reasonable fact-finder could conclude that an implication of perjury was made in the column. *Id*. at 21, 110 S.Ct. at 2707, 111 L.Ed.2d at 19. The court also held that perjury was a factual allegation that could be proven to be true or untrue. *Id*. Citing *Philadelphia Newspapers, Inc. v. Hepps* (1986), 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783, the court reasoned that a statement on matters of public concern must be provable as false before there can be liability under the law of defamation. *Id.* at 16, 110 S.Ct. at 2704, 111 L.Ed.2d at 16. As such, the United States Supreme Court reached a different conclusion from an application of the First Amendment to the United States Constitution than we had reached in *Scott* applying the Ohio Constitution.

{¶ **9**} Regardless of the outcome in *Milkovich*, the law in this state is that embodied in *Scott*. The Ohio Constitution provides a separate and independent guarantee of protection for opinion ancillary to freedom of the press. However, we do not perceive this distinction to be as great as it may appear. As Justice Brennan

observed in his dissent to *Milkovich*, the factors used to determine whether a statement implies actual facts "are the same indicia that lower courts have been relying on *** to distinguish between statements of fact and statements of opinion: the type of language used, the meaning of the statement in context, whether the statement is verifiable, and the broader social circumstances in which the statement was made." *Id.* at 24, 110 S.Ct. at 2709, 111 L.Ed.2d at 21. While it may be considered a distinction without a difference, it does alter the method of analysis. The focus shifts to whether the language under question is to be categorized as fact or opinion.

{¶ 10} In *Scott* we adopted a totality of the circumstances test to be used when determining whether a statement is fact or opinion. Specifically, the court should consider: the specific language used, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared. *Scott, supra*, at 250, 25 OBR at 308, 496 N.E.2d at 706. This analysis is not a bright-line test, but does establish parameters within which each statement or utterance may stand on its own merits rather than be subjected to a mechanistic standard. As Justice Locher, writing for the court, cautioned in Scott, "the totality of the circumstances test can only be used as a compass to show general direction and not a map to set rigid boundaries." *Id.*

{¶ 11} Furthermore, the standard must be fluid. Every case will present facts that must be analyzed in the context of the general test. Each of the four factors should be addressed, but the weight given to any one will conceivably vary depending on the circumstances presented.

{¶ 12} We begin by analyzing the context in which Dirck's statements appear. There can be no question that the general context in which the columnist's statements were made is opinion. The column appears on the Forum page of the newspaper, and is titled "Commentary." The words "forum" and "commentary" convey a message that the reader of columns so designated will be exposed to the

personal opinions of the writer. Such a column is distinguished from a news story which should contain only statements of fact or quotes of others, but not the opinion of the writer of the story. Furthermore, the Dirck column appeared in the midst of a political campaign, which provided the subject for the column.

{¶ 13} Assuming the general context of the Dirck column is opinion, that conclusion does not dispose of the legal issue. Second, we must consider the full context of the statements. Is the column characterized as statements of objective facts or subjective hyperbole? The general tenor of the column is sarcastic, more typical of persuasive speech than factual reporting. The column is prefaced with the author's name appearing above his picture and the word "commentary" appearing below it. The author's reputation as an opinionated columnist should also be considered.

{¶ 14} Thirdly the specific language used must be reviewed, focusing on the common meaning ascribed to the words by an ordinary reader. We must determine whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype and opinion; whether the language has a readily ascertainable meaning or is ambiguous. We believe the language cited by Vail to be actionable lacks precise meaning and would be understood by the ordinary reader for just what it is—one person's attempt to persuade public opinion. The same is true of the passages cited by the court of appeals in support of its conclusion. Engaging in "an anti-homosexual diatribe" and fostering "homophobia" can hardly be defined with crystal clarity. Each term congers a vast array of highly emotional responses that will vary from reader to reader. None is similar to the typical examples of punishable criminal or disciplinary conduct cited as actionable language. Dirck's veiled characterization of Vail as a liar could be construed as an objective statement. The average reader could construe this language as communicating a fact. This is particularly relevant given that under Civ. R. 12(B)(6) we must construe all inferences in favor of Vail.

However, we conclude this single phrase is insufficient to overcome the conclusion that an ordinary reader would believe that statement, just as the others, to be the opinion of the writer.

{¶ 15} The final question is whether the statements are verifiable. Does the author imply that he has first-hand knowledge that substantiates the opinions he asserts? Where the "'*** statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content.'" *Scott* at 251-252, 25 OBR at 309, 496 N.E.2d at 707, citing *Ollman v. Evans* (C.A.D.C. 1984), 750 B.2d 970, 979. Again, only the references to Vail's honesty are possibly verifiable facts and we do not find them, in the context in which they were written, to support a cause of action. The language used by Dirck is value laden and represents a point of view that is obviously subjective.

{¶ 16} Based upon the totality of the circumstances, we are convinced that the ordinary reader would accept this column as opinion and not as fact. Therefore, the statements are protected under Section 11, Article I of the Ohio Constitution.

{¶ 17} Since we have concluded that the statements at issue are constitutionally protected speech, Vail's claims for intentional infliction of emotional distress must also fail.

{¶ 18} For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

F.E. SWEENEY and COOK, JJ., concur separately.

DOUGLAS and WRIGHT, JJ., concur separately.

PFEIFER, J., concurs in judgment only.

———————————

**DOUGLAS, J., concurring.**

{¶ 19} There are a number of reasons the decision in this case should be reversed. I do not reach additional reasons, given that the column in question is

clearly opinion and, as such, the comments enjoy absolute protection from allegations of defamation.

{¶ 20} The well-reasoned majority opinion relies, and properly so, on *Scott v. News-Herald* (1986), 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699. I concurred in *Scott* and indicated, in part, that speech that is "opinion enjoys the protection afforded such speech by the First Amendment." *Id*. at 255, 25 OBR at 312, 496 N.E.2d at 709. Once a determination is made that specific speech is "opinion," the inquiry is at an end. It is constitutionally protected.

{¶ 21} What I said in *Scott* bears, I believe, repeating. In "preserving the freedoms of speech and press, guaranteed by the First Amendment, we must accord protection to the expression of ideas we abhor or sooner or later such protection of expression will be denied to the ideas we cherish." *Id*. at 260, 25 OBR at 317, 496 N.E.2d at 714.

_____

**WRIGHT, J., concurring.**

{¶ 22} I write separately not out of disagreement with some aspect of the Chief Justice's opinion, but to stress its stated underpinings -- Section 11, Article I of the Ohio Constitution. Time and again, but never more clearly than today, we have stressed that the protections accorded opinion under the Ohio Constitution are broader than the First Amendment jurisprudence developed by the United State Supreme Court.[1]

_____

1. Justice Locher, speaking for the court, first developed this view in *Scott v. News-Herald* (1986), 25 Ohio St.3d 243, 244, 25 OBR 302, 303, 496 N.E.2d 699, 701: "We find the article to be an opinion, protected by Section 11, Article I of the Ohio Constitution as a proper exercise of freedom of the press." See, also, *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph one of the syllabus, where Justice Douglas, writing for the court, emphasized the independent importance of our state's Constitution: "The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which the state court decisions may not fall." Other cases of this court have similarly stressed the importance of protecting free speech. See, *e.g., Varanese v. Gall* (1988), 35 Ohio St.3d 78, 83, 518 N.E.2d 1177, 1183, certiorari denied (1988), 487 U.S. 1206, 108 S.Ct. 2849, 101 L.E.2d 886 ("[W]e emphasize that acceptance of appellee's argument would

**{¶ 23}** It is not our purpose to enshrine the columnists and editorial writers of this state. Personally, I have a fair amount of empathy for embattled public figures. However, we must never lose sight of the simple truth that the very stability and vitality of our system of government depends upon the vigorous protection of the free expression of ideas. As I stated in *Scott v. News-Herald* (1986), 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699: "I believe the framers of our Constitution felt that an informed electorate was the genius of our system. Thus, in my view, free speech is the brightest star in our constitutional constellation." Id. at 261, 25 OBR at 317, 496 N.E.2d at 714 (Wright, J., concurring). Similarly, in a comment equally applicable to today's case, I wrote: "A free and vigorous press must be maintained even at a high cost. The very nature of daily reporting of a political campaign or of volatile public issues negates the likelihood that the coverage will always be free from inaccuracy or even bias and, thus, error becomes the unfortunate by-product of virtually every political dispute. In spite of the inevitable errors which are likely to surface, the media performs a necessary and vital function within the political process." *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 94-95, 31 OBR 250, 259, 509, N.E.2d 399, 407-408.

---

**PFEIFER, J., concurring in judgment only.**

**{¶ 24}** In reversing this court in *Milkovich v. Lorain Journal Co*. (1990), 497 U.S. 1, 19, 110 S.Ct. 2695, 2706, 111 L.Ed. 2d 1, 18, the United States Supreme Court rejected the idea developed by this court in *Scott v. News-Herald* (1986), 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699, that an additional separate constitutional privilege for "opinion" is required to ensure the freedom of

---

necessarily impose restrictions on constitutionally guaranteed freedoms of expression, a position which we must be extremely reluctant to take. The very notion of a court interfering with the free flow of debate on matters of profound public concern is repugnant to our democratic way of life. We should never forget that an unfettered press is the custodian of all our liberties and the guarantor of our progress as a free society.").

expression guaranteed by the First Amendment. Now, revisiting the issue for the first time since the Supreme Court's *Milkovich* rebuke, this court holds that while it may have been wrong about the federal Constitution in *Scott*, the Ohio Constitution separately and independently creates a special protection for opinion. While the majority in Scott did pay lip service to the Ohio Constitution, the decision in that case was based entirely on the majority's interpretation of federal law, an interpretation which the United States Supreme Court later determined was misguided.

{¶ 25} Today's opinion, then, relies completely on the naked assertion that Section 11, Article I of the Ohio Constitution provides greater protection for the publishing of opinions than the First Amendment to the federal Constitution. That assertion ignores that the Ohio Constitution essentially constitutionalizes criminal and civil causes of action for libel. The familiar words of the First Amendment read, in pertinent part:

"Congress shall make no law * * * abridging the freedom of speech, or of the press * * * ."

{¶ 26} Section 11, Article I of the Ohio Constitution, on the other hand, is more restrictive, warning Ohioans as to the boundaries of free speech:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it shall appear to the jury, that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted." (Emphasis added.)

{¶ 27} Thus, on its face the Ohio Constitution is more restrictive as to speech than the federal Constitution. While protecting speech from government interference on the one hand, the Ohio Constitution also, however, establishes

10

individual liability for the abuse of that right. It also legitimizes criminal actions for libel by recognizing a truth defense in such actions.

**{¶ 28}** The Ohio Constitution, unlike the federal Constitution, facially limits the breadth of free speech, and establishes rights for persons libeled. To hold that the Ohio Constitution provides more expansive protection for free speech than the federal Constitution is to ignore the obvious. Unfortunately, the majority provides us with no constitutional analysis to support its claim.

**{¶ 29}** The majority attempts to minimize the import of its decision by claiming that its break from federal law yields a "distinction without a difference," as if the irrelevance of today's holding should make it more palatable. The fact is that no *distinction* is necessary. To disagree with the majority in this case does not mean that pure opinion is unprotected. "[T]he '"breathing space"' which '"[f]reedoms of expression require in order to survive"' * * * is adequately secured by existing constitutional doctrine without the creation of an artificial dichotomy between 'opinion' and fact." *Milkovich*, 497 U.S. at 19, 110 S.Ct. at 2706, 111 L.Ed.2d at 18.

**{¶ 30}** Under federal law, where a media defendant is involved, "a statement on matters of public concern must be provable as false before there can be liability under state defamation law * * * ." *Milkovich*, 497 U.S. at 19, 110 S.Ct. at 2706, 111 L.Ed.2d at 18. Second, "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual" are constitutionally protected. *Milkovich*, 497 U.S. at 20, 110 S.Ct. at 2706, 111 L.Ed.2d at 19. Finally, "where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth." 497 U.S. at 20, 110 S.Ct. at 2706-2707, 111 L.Ed.2d at 19.

**{¶ 31}** Under this framework, I agree with the majority that The Plain Dealer article is not actionable. There is no way to conclusively prove exactly *how* Loren Loving Vail feels about homosexuals. The rest of Dirck's statements are characterizations, which again, although they may be hyperbolic, are not provable as false.

**{¶ 32}** The majority opinion delves into context, and thus unnecessarily enters treacherous territory. Columnists should not enjoy any greater First Amendment protection than anyone else if they publish provably false statements concerning an individual, when the statements are made with knowledge of their falsity or with reckless disregard of their truth. Newspapers should not be shielded from liability for printing lies by labeling them as commentary.

**{¶ 33}** Especially in Ohio, where there is a constitutionally recognized balance between the rights of the publisher of a statement and the rights of the subject of that statement, we should adopt the federal standard enunciated in Milkovich. This court in *Scott* meant to bring Ohio in line with federal law, but got lost along the way. The majority in this case squanders the opportunity to get back on track.

———————————