JOURNAL ENTRY and OPINION
This case is before the court on appeal from a decision of the common pleas court granting summary judgment in favor of the defendants, Tom Patterson and Ohio Casualty Group (OCG), on plaintiffs' claims for defamation. Plaintiffs-appellants, Bob Mack and Fire One Construction and Restoration Services, Inc., assign one error to the court's judgment, specifically:
 THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT.
We find no error in the common pleas court's decision and affirm its judgment.
 PROCEDURAL AND FACTUAL HISTORY
The complaint in this case was filed July 26, 1999. It alleged that Mack and Fire One had been in the construction and restoration business since 1989. Fire One had been retained by Cosmo Bordonaro as a General Contractor/Construction Manager to appraise and adjust a loss due to fire at a home owned by Cosmo Bordonaro in Chesterland, Ohio. Bordonaro carried homeowner's insurance with defendant OCG; defendant Patterson was a claims adjuster for OCG who was assigned to work on the Bordonaros' claim.
According to the complaint, Patterson sent a letter to Mack and Fire One on November 17, 1998, and transmitted copies to third parties, including the Bordonaros. The complaint claimed the letter contained false, defamatory and malicious statements about Mack and Fire One and their business practices, injuring their good name and reputation and stigmatizing their professional standing. The first count alleged these statements were made within the scope of Patterson's employment by OCG; the second count claimed Patterson was acting outside the scope of his employment.
Patterson and OCG answered, denying the essential allegations of the complaint and asserting, among other things, that the statements in the letter were true and were absolutely or qualifiedly privileged.
Mack and Fire One filed a motion for partial summary judgment on the issue of defendants' liability only. Attached to their motion were Mack's affidavit, a copy of Patterson's deposition, and a copy of the allegedly defamatory letter. OCG and Patterson filed a cross-motion for summary judgment together with the deposition testimony of Patterson and Mack and Patterson's affidavit. This evidence disclosed the following undisputed and material facts.
Fire One had been in business since 1987 or 1988 as a general contractor. Mack was its general manager. They were retained by the Bordonaros in October 1998 to perform demolition work in connection with a fire loss at the Bordonaro's home in August of that year. The property was insured by defendant OCG; defendant Tom Patterson was OCG's adjuster.
The Bordonaros retained J.H. Moorhead and Associates to adjust the loss on their behalf. The Bordonaros were unhappy with Moorhead's services and informed Mack that they had terminated Moorhead, asking Mack to take over and assist them in settling their insurance claim. Mack reluctantly agreed. He discussed with them his fee for managing the entire construction project but had not entered into a contract with the Bordonaros for this purpose.
Mack had worked with OCG a lot and worked on projects involving Patterson on three or four occasions. He also frequently worked with another adjuster, Henry Prouse. OCG's Claims Manager, Dick Snyder, had previously told Mack that Prouse thought Mack overcharged. Mack told Snyder that his estimates were subject to negotiation and that if any item were disputed, OCG should change it and we'll see; if it's not enough, then I'll tell him about it * * *.
Fire One began the demolition work at the Bordonaros' direction. Patterson wrote to the Bordonaros and complained that they had begun this work before a final agreement was reached regarding the scope of the damage and the estimated repair costs. Patterson suggested that the Bordonaros have Mack stop work and instruct him not to do anything further until he submitted an estimate and they reached an agreement regarding the scope of the damage and the cost of repair. The Bordonaros provided Mack with a copy of this letter.
Mack then wrote to Patterson, complaining that he had not been retained by OCG or Moorhead to provide an estimate on the scope of the damage, adding that:
 Tom, I appreciate that you are friends with Mr. Andrews and Mr. Moorehead [sic] [of Moorhead and Associates] and hope that we can put personalities aside and come to a mutually agreed resolution of this claim.
Patterson responded with a single-spaced, three-page letter. The portion of the letter which is claimed to be defamatory is as follows:
 What amazes me the most is the fact that you are willing to begin a job of this size with no agreement whatsoever on the scope and price. We have had our differences in the past and you seem to think this is just a personality conflict. This is not the case at all. Mr. Snyder will attest to the fact that the major problem we have had with your company is the fact that you tend to consistently [sic] and grossly overscope a loss. You say, just take out whatever we feel should not be included. This is all good and well except for the fact that the insured is expecting to get what you have estimated and are (sic) not happy when they (sic) get only what they (sic) are entitled to.
Patterson sent copies of this letter to Moorhead and to the Bordonaros.
Patterson explained that overscoping meant putting in anything in his estimate, anything that would not be necessary or not be covered by an insurance policy. As an example, he referred to a claim for water damage to a ceiling for which Mack included a new roof in his estimate, although the only thing that actually needed repair was a flashing and the only thing insurance would cover was the repair to the ceiling. Patterson said his claims manager had referred several claims to him when other claims adjusters thought Mack's estimates were too high; Patterson reviewed these claims and wrote estimates himself.
The Bordonaros later advised Mack that they had hired another contractor to rebuild their home. They did not question Mack's ability to do the work but told him that they thought [he] had a major problem with Ohio Casualty and they didn't want any more trouble.
Patterson said he sent a copy of the letter to Moorhead because he referred to them in the letter and because he thought he would need their assistance in resolving the claim at a later time. He sent a copy to the Bordonaros because OCG had an obligation to keep the policyholders apprised of the progress of their claim.
On July 11, 2000, the court entered judgment as follows:
 `s MSJ (filed 5/1/00) is denied. `s MSJ (filed 5/1/00) is granted. The court finds that Patterson's statements constituted opinion. Furthermore, had a qualified privilege which was not rebutted with evidence of malice. FINAL.
Appellants timely filed this appeal on August 9, 2000.
 LAW AND ANALYSIS
Mack and Fire One claim that the court erred by entering summary judgment against them and by denying their motion for partial summary judgment. We review the trial court's ruling on summary judgment de novo, applying the same standard the trial court was required to apply. Hillyer v. State Farm Mut. Auto Ins. Co. (1999), 131 Ohio St.3d 172,175; Weiland v. Benton (1996), 108 Ohio App.3d 512, 518. This standard requires that:
 A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Civ.R. 56(C).
A claim for defamation requires proof of five elements:
 (1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff.
Gosden v. Louis (1996), 116 Ohio App.3d 195, 206.
Expressions of opinion are protected under Section 11, Article 1 of the Ohio Constitution, which provides that [e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. We apply a totality of the circumstances test in determining whether speech is protected opinion:
 Specifically, the court should consider: the specific language used, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared.
Vail v. Plain Dealer Pub. Co. (1995), 72 Ohio St.3d 279, 282. Whether a statement constitutes fact or opinion is a question of law to be determined by the court. Id.
The only specific language which plaintiffs claim to be defamatory is the statement in the letter that you tend to consistently [sic] and grossly overscope a loss. Plaintiffs point to the letter's characterization of this statement as a fact. However, Patterson describes this as the major problem we have had with your company, indicating that it is a general description of plaintiffs' reputation at OCG. The prefix over-suggests that this is a matter of judgment and therefore a statement of opinion.
The insertion of the adverbs consistently and grossly imply that the overscoping is intentional; however, the very breadth of these terms demonstrates that they are intended to be hyperbolic. Moreover, they are counterbalanced by the use of the verb tend, which implies only that Mack is inclined or disposed to overscope. None of these words alters the basic meaning of overscope, which makes a judgment about the work that is necessary and/or covered by insurance.
We next consider whether the statement is verifiable. It was not. Patterson's statement does not refer to any specific claims. Even if it did, there would be no way to determine whether a particular estimate overscopes the loss because an estimate is, by definition, an approximation, prepared in advance of the actual work.
The general context in which this statement was made also discloses that it was an opinion, not a fact. Because Mack had not actually submitted an estimate yet, Patterson could not be accusing Mack of overscoping the loss in this case; rather, this paragraph voices a general opinion about the estimates Patterson and OCG have received from plaintiffs in the past and anticipate receiving in this case and argues for Mack to adjust his estimates to reflect only the work that will be reimbursed by insurance. This demonstrates a basic difference among the parties about the purpose of an estimate. Patterson felt strongly that an estimate should only include amounts insurance would cover, but this is only his opinion, not a matter of fact.
There was no genuine issue as to any material fact. As a matter of law, Patterson's statement was a statement of opinion; therefore, the trial court did not err by entering summary judgment for Patterson and OCG.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________________ KENNETH A. ROCCO, PRESIDING JUDGE:
ANN KILBANE, J. and JAMES J. SWEENEY, J., CONCUR.