RICH, Appellant,

v.

THOMPSON NEWSPAPERS, INC.; Glenn, Appellee.

[Cite as *Rich v. Thompson Newspapers, Inc.*, 164 Ohio App.3d 477, 2005-Ohio-6294.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2004–A–0069.

Decided Nov. 25, 2005.

478

Wynn and Wynn Co., L.P.A., and Jane Timonere, for appellant.

David A. Schroeder, for appellee.

DIANE V. GRENDELL, J.

{¶ 1} Plaintiff-appellant, Joe Rich, appeals from the September 3, 2004 judgment entry of the Ashtabula County Court of Common Pleas granting the motion to dismiss of Donald H. Glenn, defendant-appellee. For the foregoing reasons, we reverse and remand the decision of the lower court.

{¶ 2} On August 5, 2002, Glenn wrote a letter to Dr. William Licate, Superintendent of the Ashtabula Area City School District, regarding the district's hiring of Rich as a football coach at Lakeside High School. The letter stated as follows:

{¶ 3} "I understand that Mr. Joe Rich has been added to the Lakeside High School football coaching staff for the current season, and I am somewhat appalled at this news.

{¶ 4} "Are you aware that Mr. Rich was fired from his head coaching job at Sts John/Paul High School a year or so ago for supposedly having his entire team beat up on one of the players on the team. I understand that he even allowed this activity to continue in the locker room after the team left the field where an assistant coach intervened and brought it to an end. Mr. Rich supposedly was fingered as the instigator and urged it on.

{¶ 5} "The player was the son of Doctor Pleasant, a local area veterinarian. I understand that Dr. Pleasant spared the school the publicity of not sueing [sic] the school provided that Mr. Rich was fired.

{¶ 6} "Mr. Rich's addition to the Lakeside Staff is a disgrace and mind boggling in view of what he has done. I don't know about your office, but this news has created quite a stir in my community and concern for the safety of the athletes has become a real concern.

{¶ 7} "Mr. Rich is not a teacher in the system, mainly because he does not have education beyond high school, and no football playing experience beyond the high school level. All of his coaching stints have been very brief which may be a result of his inability to control his anger.

{¶ 8} "It appears that there is no real reason to keep Mr. Rich around.

{¶ 9} "I have grand children in the system and I am a sincere supporter of the Ashtabula Area City Schools. I am anxious to know if your office plans to retain Mr. Rich as a coach considering his outrageously shameful conduct.

{¶ 10} "We may be able to stop a damaging incident before it happens, and keep an out of control bully coach from walking our sidelines. In any case, we don't want to reward an individual who is a threat to putting our young people at risk."

{¶ 11} Glenn followed this letter with a second letter to Dr. Licate on August 21, 2002:

{¶ 12} "This is my second letter to you in an attempt to determine the status of Mr. Joe Rich in regards to the Lakeside High School coaching staff.

{¶ 13} "This is a very important issue in my community, though it may not be so important to you.

{¶ 14} "I ask that you give me a status report on Mr. Rich as soon as possible, so that I may pass it on to some very interested parents. Time is running out."

{¶ 15} Glenn followed these letters with two letters that were published in the Ashtabula Star Beacon, a newspaper of general circulation, in Ashtabula, Ohio, on September 21, 2002, and October 22, 2002.

{¶ 16} As a result of these letters, Rich filed a five-count complaint against Glenn and Thompson Newspapers, Inc. ("Thompson"), alleging defamation and intentional infliction of emotional distress. The letters to Dr. Licate, as well as the letters to the editor, were attached to Rich's complaint. Thompson was the prior owner of the Star Beacon. On February 11, 2003, by joint motion of the parties, Community Newspaper Holdings, Inc. ("Community"), the current owner of the Star Beacon, was substituted for Thompson as the proper party defendant. Community then filed a motion to dismiss pursuant to Civ.R. 12(B)(6), which Glenn joined. The common pleas court dismissed all claims against both parties.

{¶ 17} On appeal, this court affirmed the trial court's dismissal on all counts except Count One, the defamation claim against Glenn, arising from his letters to

Dr. Licate. The appellate court reversed and remanded the case to the trial court for the sole purpose of determining whether Count One should have been dismissed. See *Rich v. Thompson Newspapers, Inc.*, 11th Dist. No. 2003–A–0065, 2004-Ohio-1431, 2004 WL 574332.

{¶ 18} On remand, the trial court dismissed Count One, finding that the two letters from Glenn to Dr. Licate were protected expressions of opinion, and, thus, non-actionable.

{¶ 19} Rich timely raises the following as the sole issue on appeal:

{¶ 20} "Whether the trial court erred by dismissing Count 1 of the Complaint against Appellee, Glenn, by reason of the fact that the expressions contained in Appellee, Glenn's letters to Appellant's employer were protected expressions of opinion."

{¶ 21} Rich argues that, accepting all of his allegations as true, the trial court erred, as a matter of law, in finding that the contents of the August 5, 2002 letter to Dr. Licate were protected expressions of opinion. We agree.

{¶ 22} In reviewing a judgment granting a defendant's Civ.R. 12(B)(6) motion to dismiss, we must "independently review the complaint to determine whether the dismissal was appropriate." *Ferreri v. Plain Dealer Publishing Co.* (2001), 142 Ohio App.3d 629, 639, 756 N.E.2d 712, citing *Greeley v. Miami Valley Maintenance Contr., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981; *State ex rel. Hayes v. Simmons* (Aug. 15, 1997), 11th Dist. No. 96–G–2039, 1997 WL 531233, at *2. ("The ruling on a Civ.R. 12(B)(6) motion is a question of law, thereby requiring an appellate court to apply a *de novo* standard of review." Citation omitted).

{¶ 23} In conducting this independent review, an appellate court must accept as true "[t]he factual allegations of the complaint and items properly incorporated therein * * *. Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. * * * It must appear beyond doubt that plaintiff can prove no set of facts entitling [him] to relief." *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182; *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128.

{¶ 24} "Defamation is a false and malicious publication against an individual made with an intent to injure his reputation or to expose him to public hatred, contempt, ridicule, shame, or disgrace or to affect him injuriously in his trade, business or profession." (Citation omitted.) *Ferreri*, 142 Ohio App.3d at 641, 756 N.E.2d 712. In order to maintain a claim in defamation, the plaintiff must prove the following elements: "First, there must be the assertion of a false statement of fact; second, * * * the false statement of fact [must be] defamatory;

third, that the false defamatory statement was published by the defendants; fourth, * * * the publication was the proximate cause of the injury to the plaintiff; and fifth, * * * the defendants acted with the requisite degree of fault." *Celebrezze v. Dayton Newspapers, Inc.* (1988), 41 Ohio App.3d 343, 346–347, 535 N.E.2d 755.

{¶ 25} The essential question on review relates to the first element, and this court must decide whether the statements made, as a whole, were factual statements or constitutionally protected expressions of opinion.

{¶ 26} Expressions of opinion are afforded constitutional protection under Section 11, Article I of the Ohio Constitution. *Vail,* 72 Ohio St.3d at 280, 649 N.E.2d 182, citing *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 244–245, 25 OBR 302, 496 N.E.2d 699. Furthermore, these constitutional protections extend to private citizens' comments on matters of public concern. (Citations omitted.) *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 121, 752 N.E.2d 962. However, the issue of whether an alleged defamatory statement constitutes fact or opinion is a question of law. *Scott,* 25 Ohio St.3d at 250, 25 OBR 302, 496 N.E.2d 699.

{¶ 27} In Ohio, courts have adopted a totality-of-the-circumstances test to determine whether a published statement is a constitutionally protected opinion, as opposed to a statement of fact. Id. at paragraph one of the syllabus. Under this test, an appellate court considers the following four factors: (1) the specific language used in the statement, (2) whether the statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appeared. Id. at 250, 25 OBR 302, 496 N.E.2d 699 Application of the factors is fluid, and "[t]he weight given to any one factor will necessarily vary depending on the circumstances of each case." (Citations omitted.) *Sikora v. Plain Dealer Publishing Co.,* 8th Dist. No. 81465, 2003-Ohio-3218, 2003 WL 21419279, at ¶ 16.

{¶ 28} When examining the specific language used in an allegedly defamatory letter, we, as a court, examine the language used "as such language is commonly understood." *Celebrezze v. Netzley* (Aug. 4, 1988), 8th Dist. Nos. 53864 & 53865, 1988 WL 87566, at *6, quoting *Scott,* 25 Ohio St.3d at 250–251, 25 OBR 302, 496 N.E.2d 699. Moreover, the words are to "be read in context of the whole * * *, rather than in isolation." (Citation omitted.) *Ferreri,* 142 Ohio App.3d at 642, 756 N.E.2d 712. The central question to the analysis of the specific language is "whether the allegedly defamatory statement has a precise meaning and thus is likely to give rise to clear factual implications." *Wampler,* 93 Ohio St.3d at 127–128, 752 N.E.2d 962.

{¶ 29} Our review of the letter in question reveals that Glenn refers to an alleged incident that led to Rich's departure from the head coaching job at Sts. John and Paul High School, to communicate his disapproval of Rich's addition to the Lakeside High School coaching staff. In the letter, Glenn states that Rich was "fired" from his prior coaching job, because one of Rich's players, who Glenn specifically named, was "supposedly" beaten up by his teammates. Glenn further stated that Rich was "supposedly fingered as the instigator and urged it on" and that Rich's prior employer may have terminated his employment because the player's father "spared the school" the publicity of a lawsuit.

{¶ 30} The use of factual references does not automatically transform an opinion into a factual report. *Sikora*, 2003-Ohio-3218, 2003 WL 21419279, at ¶ 19. In this case, Glenn's allegations are somewhat tempered by the modifiers used, including "supposedly," "I understand," and "[i]t appears." However, since a motion to dismiss, by its nature, requires a court to view all facts and reasonable inferences in favor of the nonmoving party, we conclude, on balance, that the first factor weighs in favor of Rich.

{¶ 31} With respect to the second factor, the verifiability of the statements, the central inquiry is whether "the author impl[ies] that he has first-hand knowledge that substantiates the opinions he asserts[.]" *Vail*, 72 Ohio St.3d at 283, 649 N.E.2d 182. Here, it is clear from Glenn's use of the words "supposedly" and "I understand" in relation to the alleged events that he did not have first-hand knowledge of them. However, the writer's implication that he does not have first-hand knowledge of events is not the end of the inquiry. In reviewing the statements in question, where such statements "lack[ ] a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content." (Citation omitted.). *Scott*, 25 Ohio St.3d at 251–252, 25 OBR 302, 496 N.E.2d 699. The majority of the statements contained in Glenn's letter, when viewed as a whole, inevitably lead to the conclusion that there existed a plausible method of verification. Glenn based his statements of opinion on a specific incident, which was presumably witnessed by a number of players and coaches. Moreover, the alleged victim of the incident, who was specifically named in the letter, as well as his father, who was also named, made the incident known to the administration at Sts. John and Paul High School and allegedly called for Rich's firing in return for not initiating a lawsuit. While the issue of "[w]hether the alleged defamatory statements are verifiable is not to be confused with the writer's attempts at verifying any factual references contained in the [writing]," *Sikora*, 2003-Ohio-3218, 2003 WL 21419279, at ¶ 20, under a Civ.R. 12(B)(6) analysis, sufficient *verifiable* facts were alleged in Glenn's letter to balance the second factor of the *Scott* test in Rich's favor.

{¶ 32} We next examine the third and fourth factors, the general and broader contexts of the writing. With respect to the general context, courts will look to "the 'immediate context' in which the allegedly defamatory statement appears." (Citation omitted.) *Wampler,* 93 Ohio St.3d at 130, 752 N.E.2d 962. In doing so, we examine "more than simply the alleged defamatory statements in isolation, because the language surrounding the averred defamatory remarks may place the reasonable reader on notice that what is being read is the opinion of the writer." (Citation omitted). Id. When examining context, "[i]t is the language of the entire [writing] and not a singular factual reference, that determines whether [a writing] is fact or opinion." *Sikora,* 2003-Ohio-3218, 2003 WL 21419279, ¶ 19. When examining the immediate context, we observe some indicia that Glenn is opining on Rich's lack of fitness as a coach, such as Glenn calling Rich's hiring a "disgrace" and "mind boggling."

{¶ 33} However, when considering the conclusion of the first letter, which stated, "We may be able to stop a damaging incident before it happens, and keep an out of control bully coach from walking our sidelines," in reference to the second letter asking for a "status report on Mr. Rich as soon as possible," it becomes clear that Glenn is doing more than expressing his opinions about Rich's lack of fitness. Rather, Glenn is exhorting Dr. Licate to fire Rich from his coaching position.

{¶ 34} With respect to the fourth factor, the broader context, letters to individuals, unlike letters to the editor in newspapers or commentary from newspaper columnists, do not, *"by custom or convention* signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." Id. at 131, 752 N.E.2d 962, quoting *Ollman v. Evans* (C.A.D.C.1984), 750 F.2d 970, 983. However, the fact that the readership of a private letter is a single individual, rather than a group, does not necessarily preclude a court from finding that a private letter contains a constitutionally protected opinion, dependent upon the other three factors.

{¶ 35} Based upon the totality of the circumstances, we conclude that Rich has alleged sufficient facts to survive Glenn's motion to dismiss and may proceed in attempting to prove his case. Rich's sole assigned error has merit. Accordingly, we reverse and remand the judgment of the Ashtabula County Court of Common Pleas for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FORD, P.J., and RICE, J., concur.