This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-plaintiff Andrew Sovchik has appealed the order of the Medina County Court of Common Pleas granting summary judgment in favor of appellee-defendant Christi Roberts. This Court reverses in part, and affirms in part.
 I.
In 1997, Andrew Sovchik was employed as an Assistant Principal for Cloverleaf High School. Sovchik was retained on a two-year employment contract. Before the expiration of his two-year term, the Superintendent advised Sovchik that she would recommend the Board of Education ("the Board") not renew his contract. The Superintendent invited Sovchik to resign. Thereafter, Sovchik tendered a letter of resignation.
The imminent departure of Sovchik became public knowledge. Some students at Cloverleaf High School walked out of school to demonstrate support for Sovchik. On March 16, 1999, Sovchik was discharged of all of his duties and advised that he was banned from school property and school functions. The Board voted to accept Sovchik's resignation.
Sovchik's departure generated controversy. School board meetings attracted larger crowds than usual, and the Board was criticized by supporters of Sovchik. Flush with electronic and print media coverage, Sovchik wrote the Board requesting that his resignation be rescinded. The controversy only heightened.
Cheri Roberts, wife of a member of the Board, wrote a letter regarding the Sovchik departure, and mailed it to the Beacon Journal, MedinaGazette, Plain Dealer, Lodi Lookout, and to nineteen members of the community. None of the four newspapers printed the letter, and only theBeacon Journal reported on the letter.
Sovchik learned of Roberts' letter when a supporter, who was one of the letter recipients, called. Sovchik found ten points raised in the Roberts' letter to be defamatory: (1) Sovchik attested on his initial application that he had no criminal background; (2) the background check did not confirm Sovchik's claims; (3) Sovchik was not honest about his past; (4) that class disruptions and volatile confrontations need not be part of a student's environment; (5) Sovchik could not "watch his temper and tongue under extreme situations with adults"; (6) negative evaluations had not changed his behaviors; (7) "I can only imagine what might happen if one of the students who HE [sic] imposed a disciplinary action on [sic] would have tried to `negotiate' his sentence."; (8) "And God forbid, WHAT IF [sic] he lost his temper yet again only this time at a student who knew which buttons to push to get him really riled."; (9) Sovchik was akin to a loaded cannon ready to go off knowing his history and repeat performances; (10) that Sovchik's successor was honest from the start.
Sovchik filed suit for defamation against Roberts on April 1, 1999. Upon the completion of discovery, which included the depositions of the parties, Roberts moved for summary judgment. Sovchik filed a motion in opposition to the motion for summary judgment. On July 10, 2000, the trial court granted summary judgment in favor of Roberts.
Sovchik timely appealed, asserting four assignments of error.
 II. FIRST ASSIGNMENT OF ERROR The trial court erred in granting summary judgment for Appellee Christi Roberts on Appellant Andrew Sovchik's claim for defamation.
 In his first assignment of error, Sovchik claims that the trial court erred in entering summary judgment for Roberts. Specifically, Sovchik claims that the trial court failed to apply the proper test for defamation in Ohio, and that there were genuine issues of material fact. This Court agrees.
Because only legal questions are involved, an appellate court will not afford a trial court any special deference when reviewing an entry of summary judgment. Klingshirn v. Westview Concrete Corp. (1996),113 Ohio App.3d 178, 180. Rather, the appellate court will apply the same standard used by the trial court, and will review the matter denovo. Id. at 180.
Civ.R. 56(C) provides that summary judgment may be granted only when a court is satisfied that there is no genuine issue as to any material facts, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion that, even viewing the evidence most strongly in favor of the nonmoving party, is adverse to the nonmoving party. State ex rel. Leigh v. State Emp.Relations (1996), 76 Ohio St.3d 143, 144. The substantive law involved controls which facts are considered material; those factual disputes that have the potential to affect the outcome of a lawsuit are material and would preclude summary judgment, while factual disputes that cannot affect the outcome are deemed irrelevant and will not affect summary judgment. Orndorff v. Aldi, Inc. (1996), 115 Ohio App.3d 632, 635, appeal not allowed (1997), 78 Ohio St.3d 1429, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 248, 91 L.Ed.2d 202, 211.
This Court has previously noted:
 A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. As a result, a moving party is entitled to judgment as a matter of law where the nonmoving party failed to come forth with evidence of specific facts on an essential element of the case with respect to which he has the burden of proof.
 Black v. Cosentino (1996), 117 Ohio App.3d 40, 43
citing Celotex Corp. v. Catrett (1986), 477 U.S. 317, 323, 91 L.Ed.2d 265, 273. The Ohio Supreme Court has explained the burden allocation involved for moving and nonmoving parties:
 [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
 (Emphasis deleted.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
In order to sustain an action for defamation, the plaintiff must show: (1) a false and defamatory statement; (2) about the plaintiff; (3) published to a third party without privilege; (4) with fault or negligence by the defendant; (5) that was either defamatory per se or caused special harm to the plaintiff. Akron-Canton Waste Oil, Inc. v. Safety-Kleen OilServ., Inc. (1992), 81 Ohio App.3d 591, 601, appeal not allowed (1992),65 Ohio St.3d 1458, citing 3 Restatement of the Law 2d, Torts (1977) 155, Section 658. A statement is defamatory per se if it tends to cause injury to a person's reputation, exposes him to public ridicule or shame, or adversely affects a person in their trade or business. LakotaLoc. School Dist. Bd. of Edn. v. Brickner (1996), 108 Ohio App.3d 637,647.
In the instant case, the first three statements highlighted by Sovchik in Roberts' letter — that Sovchik attested that he had no criminal record, that the background check did not confirm his claims, and that Sovchik was dishonest about his past — are facial untruths revealed by the record. The record reflects that Sovchik did answer truthfully on his employment application, namely that he did not commit any disqualifying offenses. See R.C. 3319.39.
This Court concludes that on this basis, a genuine issue of material fact exists as to whether Roberts made this false statement with actual malice (as discussed infra in combined assignments of error three and four), the fourth prong of the defamation test. As the record is not dispositive of whether Roberts made the three false statements with actual malice, it is properly left to the trier of fact to resolve. Accordingly, the trial court erred in entering summary judgment for Roberts.
Sovchik's first assignment of error is sustained.
SECOND ASSIGNMENT OF ERROR
The trial court erred in extending protection to the "opinion" ofAppellee Christi Roberts.
 In his second assignment of error, Sovchik claims that the trial court erred in finding the opinion of Roberts to be privileged. This Court concludes that the expressions of opinion in Roberts' letter are protected under Section 11, Article I of the Ohio Constitution.
Section 11, Article I of the Ohio Constitution provides:
 Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press.
 (Emphasis added.)[1] See, also, Vail v. Plain Dealer Publishing Co. (1995), 72 Ohio St.3d 279, 284, certiorari denied (1995), 516 U.S. 1043, 116 S.Ct. 700, 33 L.Ed.2d 657 ("Once a determination is made that specific speech is `opinion,' the inquiry is at an end. It is constitutionally protected."). The opinion privilege serves "to avoid self-censorship, whereby overbroad defamation standards result in the stifling of important non-defamatory material." Scott v. News-Herald (1986), 25 Ohio St.3d 243, 245.
In resolving whether an allegedly defamatory statement is protected opinion, a court must consider the totality of the circumstances. Vail,supra, at syllabus. In particular, "a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared." Id.
As discussed supra, Sovchik claims that ten portions of the Roberts' letter amount to defamation: (1) Sovchik attested on his initial application that he had no criminal background; (2) the background check did not confirm Sovchik's claims; (3) Sovchik was not honest about his past; (4) that class disruptions and volatile confrontations need not be part of a student's environment; (5) Sovchik could not "watch his temper and tongue under extreme situations with adults"; (6) negative evaluations had not changed his behaviors; (7) "I can only imagine what might happen if one of the students who HE [sic] imposed a disciplinary action on [sic] would have tried to `negotiate' his sentence."; (8) "And God forbid, WHAT IF [sic] he lost his temper yet again only this time at a student who knew which buttons to push to get him really riled."; (9) Sovchik was akin to a loaded cannon ready to go off knowing his history and repeat performances; (10) hoped that Sovchik's successor was honest from the start.
This Court finds that the first three highlighted statements of the Roberts' letter (that Sovchik lied on his application about his criminal record, that the background check did not support Sovchik's claims, and that Sovchik was not honest about his past) are statements of fact. First looking to the specific language used, the three statements make allegations that Sovchik lied on his applications, which was not true. Second, in reviewing whether the statements were verifiable, they were in the sense that they could verifiably be disproved. Third, considering the general context of the statements, the first three statements relate to the fact that Sovchik responded to a question on his application in the negative as to whether he had committed any disqualifying offenses. See R.C. 3319.39. Fourth, reviewing the broader context in which the statements appeared, the Roberts' letter was mailed to four newspapers and nineteen Cloverleaf citizens and was meant to present allegations of fact to rebut the growing controversy swirling around Sovchik's dismissal.
This Court concludes that the first three portions of the Roberts' letter present inaccurate factual statements that relate directly to Sovchik's answer on the application that he had been convicted of no disqualifying offenses. Since Section 11, Article I of the Ohio Constitution confers no privilege for expressions of fact, the trial court was incorrect in concluding that the first three statements were protected by privilege.
Upon review and application of the Vail standard, this Court finds that the last seven portions of the Roberts' letter highlighted by Sovchik, and set forth above, constitute expressions of opinion protected by Section 11, Article I of the Ohio Constitution.
Accordingly, Sovchik's claim is sustained as to the first three highlighted portions of Robert's letters, but denied as to the balance of the claims.
THIRD ASSIGNMENT OF ERROR
The trial court erred in concluding that Appellant Andrew Sovchik was a"limited purpose public figure. [sic]
FOURTH ASSIGNMENT OF ERROR
The trial court erred in concluding that Appellee Christi Roberts did notact with actual malice in making the statements regarding AppellantAndrew Sovchik since the trial has already concluded that the statementswere in fact false.
The foregoing assignments of error are considered together as they raise similar issues of law and fact.
In Talley v. WHIO TV-7 (1998), 131 Ohio App.3d 164, 169-170, the Second District Court of Appeals elegantly surveyed the law governing plaintiff classifications in a defamation suit:
 There are four classifications into which a plaintiff who alleges defamation may fall: (1) a private person; (2) a public official; (3) a public figure; (4) a limited purpose public figure. Classification is important because it determines the plaintiff's burden of proof. If a court determines that a plaintiff is a private person, the plaintiff can recover if defendant acted negligently in publishing or reporting facts. Dun Bradstreet, Inc. v. Greenmoss Builders, Inc. (1985), 472 U.S. 749, 766, 105 S.Ct. 2939, 2949, 86 L.Ed.2d 593, 607.
 A public official cannot recover for defamation unless the official proves that the defendant made the statement with actual malice. New York Times Co. v. Sullivan (1964), 376 U.S. 254, 279-280, 84 S.Ct. 710, 725-726, 11 L.Ed.2d 686, 706-707. Actual malice exists when a defendant makes the statement with knowledge of the statement's falsity or with reckless disregard of whether it is false. Id. Recklessness requires evidence that the defendant had serious doubts whether the statement was true. Restatement of the Law 2d, Torts (1977) Section 580A, Comment h.
 The New York Times standard also applies to a public figure. Public figure status comes from the plaintiff's position alone, or from some purposeful activity that thrusts that person "into the vortex of an important public controversy." Curtis Publishing Co. v. Butts (1967), 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094, 1111. A public figure can recover if he proves that the defendant made the statement with actual malice.
 A limited purpose public figure is a person who becomes a public figure for a specific range of issues. Gertz v. Robert Welch, Inc. (1974), 418 U.S. 323, 351, 94 S.Ct. 2997, 3012-3013, 41 L.Ed.2d 789, 811-812. Whether a person is a limited purpose public figure is determined by examining that person's participation in the controversy from which the alleged defamation arose, and whether he has attained a general notoriety in the community by reason of that participation.
The Ohio Supreme Court has determined that "a public school principal is not a public official for purposes of defamation law." East Canton Edn.Assn. v. McIntosh (1999), 85 Ohio St.3d 465, 474. However, the issue of whether a public school principal is a public figure or limited purpose public figure is an open question to be determined on a case by case basis. See id. at 474-475. A public figure would have to demonstrate that the defendant acted with actual malice as opposed to negligence when they made an allegedly defamatory statement. See New York Times Co. v.Sullivan (1964), 376 U.S. 254, 279-280.
Sovchik relies on East Canton, in which a public school principal was found not to be a public figure. In East Canton the plaintiff was a passive figure who never sought out the media or met with public supporters. However, such passivity was not in evidence here. Far from a retiring figure, Sovchik actively interacted with the Cloverleaf community and the media during the controversy over his departure. Sovchik took the public action of requesting that his letter of resignation be rescinded. Sovchik spoke with students and parents, met with public supporters, and publicly addressed the Cloverleaf Cares Organization and spoke of his desire to return to the school district. Sovchik provided interviews with electronic and print media. Sovchik returned phone calls to a newspaper reporter and forwarded materials to the reporter. In short, the record reflects that Sovchik was not passively reposed in the eye of a public storm, rather, Sovchik was becoming the public storm. Accordingly, this Court cannot conclude that the trial court's factual conclusions were in error.
Sovchik's third and fourth assignments of error are overruled.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed equally to both parties.
Exceptions.
______________________________________ DONNA J. CARR
WHITMORE, J. CONCURS
[1] Sovchik argues that the privilege set forth in Section 11, Article I is solely applicable to members of the media. In support of this contention, Sovchik points to Vail, which construed the privilege against the statements of a member of the media. However, the plain language of the constitutional provision "[e]very citizen" cannot reasonably be construed as applying only to members of the media. Moreover, while the defendant in Vail was a newspaper, the Ohio Supreme Court never stated that the privilege set forth in Section 11, Article I was meant only for members of the media. This Court must give effect to the words used in the Ohio Constitution, and the term "[e]very citizen," should mean just that. Accordingly, Roberts' letter must be construed against the privilege set forth in Section 11, Article I of the Ohio Constitution.
This approach was endorsed by the Fourth District Court of Appeals inWampler v. Higgins (May 31, 2000), Pickaway App. No. 2000CA5, unreported, appeal not allowed (2000), 90 Ohio St.3d 1430. In Wampler
the court reviewed and rejected the contention that the protections of Section 11, Article I were meant solely for members of the media as against all citizens: "Nothing in Section 11, Article I of the Ohio Constitution purports to limit to the press the freedom to speak. Rather, the language of the Constitution extends to all citizens the freedom to speak."
For his part, Sovchik relies upon Conese v. Nichols (1998),131 Ohio App.3d 308, 315-316, wherein the court conferred the privilege of Section 11, Article I only upon the media because "[t]hus far, the Ohio Supreme Court has extended this absolute privilege to express opinions only to media defendants * * * and only to statements made directly by, not to, the media[.]" The Conese view is flawed because a constitutional right broadly stated to unambiguously attach to "every citizen," does not lie dormant until such time as the Ohio Supreme Court construes the provision. This Court must honor the clear text of the constitutional protection set forth in Section 11, Article I and apply its privilege to all citizens, whether they have media credentials or not.