[Cite as *HDV Cleveland, L.L.C. v. Ohio Liquor Control Comm.*, 2017-Ohio-9032.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

HDV Cleveland, LLC, d.b.a.      :
Larry Flynt's Hustler Club,
                               :
        Appellant-Appellant,
                               :            No. 17AP-362
v.                                        (C.P.C. No. 16CV-10364)
                               :
Ohio Liquor Control Commission,           (REGULAR CALENDAR)
                               :
        Appellee-Appellee.
                               :

---

D E C I S I O N

Rendered on December 14, 2017

---

**On brief:** *Berkman, Gordon, Murray & DeVan, J. Michael Murray*, and *Steven D. Shafron*, appellant. **Argued:** *J. Michael Murray*.

**On brief:** *Michael DeWine*, Attorney General, and *Charles E. Febus*, for appellee. **Argued:** *Charles E. Febus*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Appellant-appellant, HDV Cleveland, LLC, d.b.a. Larry Flynt's Hustler Club, appeals from a judgment of the Franklin County Court of Common Pleas affirming orders of appellee-appellee, Ohio State Liquor Control Commission ("commission"), issued on September 9 and October 19, 2016 and April 25, 2017. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant operates an adult night club in Cleveland, Ohio. At all relevant times, appellant held a valid D-5 and D-6 liquor permit issued by the Ohio division of

Liquor Control ("division"). According to appellant, the club operates a bar on the premises where patrons can sit and purchase alcoholic beverages. In addition to the bar area, the club contains a stage featuring female entertainers performing choreographed erotic dance. The club also contains a VIP area where entertainers can perform personal one-on-one dances for patrons who pay a fee.

{¶ 3} On August 29, 2015, liquor control agent Kevin J. Cesaratto entered the club posing as a patron, and he paid the required fee for a personal one-on-one dance in the VIP area. According to Cesaratto's September 3, 2015 investigation report, during the private dance, the female entertainer "expos[ed] her naked breasts, * * * rubbed her bare nipple over [his] lips * * * and pulled away the clothing exposing her vagina [and] exposing her anus." Liquor control agents subsequently cited appellant for two violations of Ohio Adm.Code 4301:1-1-52, otherwise known as "Rule 52." Agents cited appellant for prohibited conduct in knowingly or willfully allowing dancers to "[a]ppear in a state of nudity," in violation of Ohio Adm.Code 4301:1-1-52(B)(2), and to "[e]ngage in sexual activity," in violation of Ohio Adm.Code 4301:1-1-52(B)(3).

{¶ 4} The commission held a hearing on August 11, 2016 regarding the two charges stemming from the August 29, 2015 investigation, as well as two other charges arising out of a similar investigation on February 7, 2015. As a result of the hearing, appellant denied the August 29, 2015 charge alleging nudity but stipulated to the facts contained in agent Ceseratto's report. The commission dismissed the second charge of "sexual activity" arising from the August 29, 2015 investigation. The commission also dismissed the two charges arising out of the February 7, 2015 investigation.

{¶ 5} On August 25, 2016, the commission issued an order finding that appellant committed one violation of Rule 52 and imposing the following penalty:

> It is the order of this Commission that the Permit Holder has the option to either pay a forfeiture in the amount of $100,000.00, or the permit will be REVOKED if the Permit Holder shall elect to pay the forfeiture, the Permit Holder has twenty-one (21) days after the date on which this order is sent to pay the full amount of the forfeiture.

(Order at 1.)

{¶ 6} The commission subsequently denied appellant's motion for reconsideration on October 19, 2016. On November 1, 2016, appellant filed a notice of appeal to the common pleas court pursuant to R.C. 119.12. The notice of appeal alleges the following errors by the commission:

> The grounds for the appeal are that the decisions below are not supported by reliable, substantial and probative evidence; that the decisions below are contrary to law; that Regulation 4301:1-1-52 is unconstitutional on its face and as applied under Art. I, § 11 of the Ohio Constitution; that the forfeiture imposed is excessive and far greater than forfeitures imposed on permit holders that are similarly situated or whose violations were more egregious and denies HDV equal protection of the laws, as well as procedural and substantive due process under the Fourteenth Amendment to the United States Constitution, and Art. I, §§ 1, 2 and 16 of the Ohio Constitution.

(Notice of Appeal at 1-2.)

{¶ 7} On November 4, 2016, the trial court stayed the commission's order pending appeal. On December 19, 2016, appellant moved the trial court to supplement the administrative record with evidence in support of its contention that Rule 52 is unconstitutional. On April 25, 2017, the trial court issued a decision and entry affirming the commission's order and denying appellant's motion to supplement the administrative record.

{¶ 8} Appellant timely appealed to this court from the trial court judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 9} Appellant sets forth the following three assignments of error:

> 1. Rule 52 is unconstitutional on its face and as applied under Art. I, § 11 of the Ohio Constitution, and the court below erred in concluding otherwise.
>
> 2. The court erred in sustaining the penalty imposed by the Commission that HDV pay $100,000 or have its license revoked because the penalty violated HDV's right to due process and equal protection under the United States and Ohio Constitutions and because it was not supported by substantial, reliable and probative evidence.

3. The Court erred in denying HDV the opportunity to supplement the administrative record at an evidentiary hearing on the issue of the unconstitutionality of Rule 52 on its face under Art. I, § 11 of the Ohio Constitution, and of the unconstitutionality of the penalty that it imposed.

## III. STANDARD OF REVIEW

{¶ 10} "Under R.C. 119.12, a common pleas court, in reviewing an order of an administrative agency, must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and the order is in accordance with law." *Yohannes Parkwood, Inc. v. Liquor Control Comm.*, 10th Dist. No. 13AP-974, 2014-Ohio-2736, ¶ 9, citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980). "When a court of common pleas reviews an administrative determination such as that of the commission, its review is 'neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." ' " (Emphasis sic.) *Gemini, Inc. v. Liquor Control Comm.*, 10th Dist. No. 07AP-112, 2007-Ohio-4518, ¶ 6, quoting *Big Bob's, Inc. v. Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 14 (10th Dist.), quoting *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981). "[T]he common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive." *Gemini* at ¶ 6, citing *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is "in accordance with law." *Yohannes* at ¶ 9, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 11} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). "The appellate court reviews factual issues to determine whether the court of common pleas abused its discretion in determining that the administrative action either was or was not supported by reliable, probative and substantial evidence." *Yohannes* at ¶ 10, citing *Alternative Residences, Two, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 04AP-306, 2004-Ohio-6444, ¶ 17. " '[A]buse of discretion' connotes more than an error

of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Yohannes* at ¶ 10, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court." *Yohannes* at ¶ 10, citing *Pons* at 621. "An appellate court, however, has plenary review of purely legal questions." *Yohannes* at ¶ 10, citing *Big Bob's* at ¶ 15.

## IV. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 12} In appellant's first assignment of error, appellant contends the trial court erred when it concluded that Rule 52 does not violate Article I, Section 11 of the Ohio Constitution either on its face or as applied to appellant. We disagree.

{¶ 13} Rule 52 contains the following prohibition against improper conduct by permit holders:

> (B) Prohibited activities; no permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:
>
> * * *
>
> (2) Appear in a state of nudity.

{¶ 14} Ohio Adm. Code 4301:1-1-52(A)(2) defines nudity as "the showing of the human male or female genital, pubic area or buttocks with less than a fully opaque covering; the showing of the female breast with less than a fully opaque covering of any part of the nipple and/or areola."

{¶ 15} As noted above, appellant stipulated to the investigator's report, which sets forth sufficient facts to support the commission's finding that appellant committed a violation of Ohio Adm.Code 4301:1-1-52(B)(2). Appellant does not deny that conduct amounting to a violation of Rule 52 occurred. Rather, appellant challenges the constitutionality of Rule 52 on grounds that the rule violates appellant's right to freedom of expression guaranteed by Article I, Section 11 of the Ohio Constitution. According to appellant, Rule 52 is an unconstitutional prior restraint on appellant's freedom of expression both on its face and as applied to appellant.

## 1. Constitutionality of Rule 52 Under the United States Constitution

{¶ 16} Appellant concedes that Rule 52, in its current form, has previously withstood constitutional scrutiny under the First and Fourteenth Amendments to the United States Constitution. In *WCI, Inc. v. Liquor Control Comm.*, 10th Dist. No. 16AP-72, 2016-Ohio-4778, appellant, WCI, Inc., d.b.a. Cheeks, appealed a decision of the common pleas court affirming the commission's order requiring it to either pay a forfeiture of $25,000 or lose its liquor license due to a violation of Rule 52. In *WCI*, an investigator for the Department of Public Safety reported while he was posing as a customer, one of appellant's dancers knowingly touched him while nude or semi-nude and that she subsequently led the investigator to a table located at the entrance of the private area where she gave another employee an undetermined amount of money. Appellant was cited for a violation of Ohio Adm.Code 4301:1-1-52(B)(2), nudity.

{¶ 17} Appellant appealed the penalty imposed by the commission on several grounds, including the constitutionality of Rule 52 under the First and Fourteenth Amendments to the United States Constitution. The common pleas court found that Rule 52 was constitutional and the commission's order was supported by reliable, probative, and substantial evidence and was in accordance with law. In disposing of appellant's third assignment of error on appeal, this court noted that "[t]he question of whether Rule 52 violates the First and Fourteenth Amendment to the United States Constitution has already been settled." *Id.* at ¶ 24. This court discussed the prior jurisprudence on the issue as follows:

> The United States Supreme Court held that content-neutral time, place and manner regulations of protected speech will survive constitutional scrutiny "so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Renton v. Playtime Theatres*, 475 U.S. 41, 47, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986). "[T]he constitutionally of regulations that purport to ameliorate the deleterious secondary effects of sexually oriented establishments under the intermediate-scrutiny standard announced in [*Renton*]." *Entertainment Prods., Inc. v. Shelby Cnty.*, 721 F.3d 729, 734 (6th Cir.2013).
>
> "Rule 52 is a content-neutral regulation aimed at ameliorating the adverse secondary effects associated with nude dancing in

an environment that sells liquor." *J.L. Spoons, Inc. v. Ohio Dep't of Pub. Safety*, 31 F. Supp. 3d 933, 938-39 (N.D.Ohio 2014), *See Renton* at 47 (finding that the Renton ordinance is content neutral because it "is aimed not at the content of the films shown at 'adult motion picture theaters,' but rather at the *secondary effects* of such theaters on the surrounding community"). (Emphasis sic.)

"Rule 52's requirement that dancers at establishments that serve alcohol wear, at a minimum, pasties, passes constitutional scrutiny." *J.L. Spoons* at 943. "The evidence establishes that the State, when it promulgated Rule 52, had a reasonable evidentiary basis for concluding that nude dancing in adult cabarets leads to undesirable secondary effects." *Id.* at 951. *J.L. Spoons* clearly shows that Rule 52 passes constitutional scrutiny.

*Id.* at ¶ 25-27.[1]

{¶ 18} In this court's previous decision in *34 Jefferson, LLC v. Liquor Control Comm.*, 10th Dist. No. 11AP-868, 2012-Ohio-3231, we rejected appellant's contention that former Rule 52 violated the First Amendment to the United States Constitution on its face and as applied to appellant. In *34 Jefferson*, the permit holder was cited for several Rule 52 violations when a male dancer at the club exposed his buttocks and genitals during a performance. The commission found that the permit holder committed a violation of Ohio Adm.Code 4301:1-1-52(B)(1) prohibiting disorderly conduct and Ohio Adm.Code 4301:1-1-52(B)(2) and (4) prohibiting public indecency. The commission ordered it to pay a forfeiture or serve a suspension order. The common pleas court upheld the violation for public indecency but not disorderly conduct. The permit holder appealed.

{¶ 19} On appeal, this court held that former Rule 52, as it pertained to "nudity," did not violate the First Amendment of the United States Constitution either on its face or as applied to appellant. With regard to the permit holder's contention that former Rule 52 was facially invalid due to overbreadth, this court set forth the relevant law as follows:

In order for a statute to be facially challenged on overbreadth grounds, " 'there must be a realistic danger that the statute itself will significantly compromise recognized First

---

[1] Brunner, J., concurred as to the majority's resolution of appellant's first, third, and fourth assignments of error but dissented, in part, as to appellant's second assignment of error regarding the property rights of permit holders.

Amendment protections of parties not before the Court.' " *161 Dublin,* [*Inc. v. Liquor Control Comm.*, 10th Dist. No. 01AP-134 (Dec. 27, 2001)], quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). Further, "particularly where conduct and not merely speech is involved, * * * the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Okla.*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). The "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council* at 800.

One federal court has noted that "the Supreme Court has 'vigorously enforced the requirement that a statute's overbreadth be substantial,' * * * and cautioned that invalidation for overbreadth be deployed sparingly and 'only as a last resort.' " *Entertainment Prods., Inc. v. Shelby Cty., Tenn.*, 588 F.3d 372, 379 (6th Cir. 2009), citing *Broadrick* at 613. Moreover, "[o]nly if a plaintiff demonstrates 'from the text of [the statute] and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally,' is facial invalidation on overbreadth grounds appropriate." *Entertainment Prods.* at 379.

*34 Jefferson* at ¶ 28-29.

{¶ 20} In finding that the permit holder's overbreadth argument had no merit with regard to the prohibition on dancers appearing "in a state of nudity," the *34 Jefferson* court concluded that "we are not persuaded that the rule [is] susceptible to 'a substantial number of impermissible applications.' " *Id.* at ¶ 32, quoting *New York v. Ferber*, 458 U.S. 747, 771 (1982).[2]

{¶ 21} The permit holder in *34 Jefferson* also contended former Rule 52 was unconstitutional as applied to an expressive dance performance because it was a content-based prohibition on performances likely to offend the viewer. In holding that Rule 52

---

[2] This court did find that the provision in former Ohio Adm.Code 4301:1-1-52 pertaining to "lewd activities" was unconstitutionally overbroad. Though Rule 52 was subsequently amended to remove the offending provisions, the specific prohibition against persons "[a]ppear[ing] in a state of nudity" remains part of Rule 52.

was not unconstitutional as applied to nude dancing, this court set forth the relevant legal principal as follows:

> The United States Supreme Court has recognized that "nude dancing * * * is expressive conduct, although * * * it falls only within the outer ambit of the First Amendment's protection." *Erie v. Pap's AM.*, 529 U.S. 277, 289, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000). In *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991), the Supreme Court considered a public indecency statute as applied to nude dancing, and adopted the four-part test of *United States v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), in determining the constitutionality of a government rule or regulation proscribing protected expressive conduct. Under that test, a government regulation is sufficiently justified if it (1) is " 'within the constitutional power of the Government,' " (2) " 'furthers an important or substantial governmental interest,' " (3) " 'the governmental interest is unrelated to the suppression of free expression,' " and (4) " 'the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.' " *Barnes* at 567, quoting *O'Brien* at 377.

> The United States Supreme Court has recognized that "nude dancing * * * is expressive conduct, although * * * it falls only within the outer ambit of the First Amendment's protection." *Erie v. Pap's AM.*, 529 U.S. 277, 289, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000). In *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991), the Supreme Court considered a public indecency statute as applied to nude dancing, and adopted the four-part test of *United States v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), in determining the constitutionality of a government rule or regulation proscribing protected expressive conduct. Under that test, a government regulation is sufficiently justified if it (1) is " 'within the constitutional power of the Government,' " (2) " 'furthers an important or substantial governmental interest,' " (3) " 'the governmental interest is unrelated to the suppression of free expression,' " and (4) " 'the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.' " *Barnes* at 567, quoting *O'Brien* at 377.

*Id.* at ¶ 20.

{¶ 22} This court disagreed with appellant's "as applied" argument, stating that "[i]n general, courts have recognized that [Rule 52] is a content-neutral regulation designed to address the negative secondary effects relating to adult establishments." *Id.* at ¶ 25, citing *J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 382 (2008). This court reasoned that the "undesirable secondary effects" Rule 52 was designed to thwart included "prostitution, drug trafficking, and assault, associated with nude dancing in an environment serving alcohol." *34 Jefferson* at ¶ 25, quoting *J.L. Spoons* at 382; *see also Junction 615, Inc. v. Liquor Control Comm.*, 135 Ohio App.3d 33, 40 (11th Dist.1999). This court found "no merit to appellant's claims that the regulation * * * represent[s] a content-based prohibition on expressive performances; nor do we find that the trial court erred in concluding appellant failed to establish the regulation is unconstitutional as applied to the facts herein." *34 Jefferson* at ¶ 26.

## 2. Constitutionality of Rule 52 Under Article I, Section 11 of the Ohio Constitution

{¶ 23} Appellant does not dispute the United States Supreme Court and the Supreme Court of Ohio have applied the secondary-effects doctrine in upholding local government's regulation of brick-and-mortar purveyors of adult sexually explicit conduct. Appellant also concedes that *34 Jefferson*, *WCI*, *and J.L. Spoons* have determined that the "state of nudity" provision of Rule 52 does not violate the First Amendment of the United States Constitution either on its face or as applied to establishments providing choreographed erotic dancing. Appellant argues, however, that no Ohio court has considered a challenge to Rule 52 under the analogous provisions of Article I, Section 11 of the Ohio Constitution. Article I, Section 11, provides as follows:

> Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press.

{¶ 24} Appellant claims that expressive conduct receives greater protection from government regulation under the Ohio Constitution than it does under the United States Constitution. Accordingly, appellant argues the case law establishing the constitutionality of Rule 52 under the United States Constitution does not foreclose appellant's argument

in this case that Rule 52 violates Article I, Section 11 of the Ohio Constitution both on its face and as applied to appellant.  We disagree.

{¶ 25} Appellant cites the opinion of the Supreme Court of Ohio in *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279 (1995), in urging this court to hold that Rule 52 violates Article I, Section 11 of the Ohio Constitution.  In *Vail*, the Plain Dealer Publishing Company ("Plain Dealer") published a column authored by appellant, Joe Dirck, concerning Vail's 1990 campaign for the Ohio Senate.  Vail sued the Plain Dealer and Dirck alleging defamation.  The Plain Dealer and Dirck argued the alleged defamatory statements in the article were privileged statements of opinion rather than actionable statements of fact.  The trial court dismissed Vail's defamation claim for failure to state a claim for relief after concluding the alleged defamatory statements were constitutionally protected opinions.  The Eighth District Court of Appeals reversed, holding that the statements at issue were actionable because the statements were capable of being proven false.

{¶ 26} In *Vail*, the issue for the Supreme Court was whether, for purposes of determining if an alleged defamatory statement is a statement of fact or opinion, the court should follow the United States Supreme Court opinion in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), or apply the four-part test earlier adopted by the Supreme Court of Ohio in *Scott v. News-Herald*, 25 Ohio St.3d 243 (1986).[3]  In *Milkovich*, the United States Supreme Court rejected the notion that an additional separate constitutional privilege for "opinion" is required to ensure the freedom of expression guaranteed by the First Amendment of the United States Constitution.  *Vail* at 281, citing *Milkovich* at 21.

{¶ 27} The Supreme Court of Ohio in *Vail* determined that "[r]egardless of the outcome in *Milkovich*, * * * [t]he Ohio Constitution provides a separate and independent guarantee of protection for opinion ancillary to freedom of the press."  *Vail* at 281.  Accordingly, the Supreme Court in *Vail* concluded that guarantee of protection for opinions in Article I, Section 11 of the Ohio Constitution will apply to the benefit of a

---

[3] Pursuant to *Scott*, a court should consider the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. *Id.* at syllabus.

defamation defendant when the allegedly defamatory statements constitute statements of opinion under *Scott's* four-part test. *Vail* at 280.

{¶ 28} Appellant contends that, pursuant to the reasoning *Vail,* this court should hold that the greater protections afforded to opinions under Article I, Section 11 of the Ohio Constitution should be extended to expressive conduct in the form of choreographed erotic dance. In making this argument, appellant notes that the Ohio Constitution includes the words "restrain or abridge," as opposed to simply the word "abridge."

{¶ 29} The holding in *Vail* speaks only to the Article I, Section 11 protection afforded "opinion" in defamation and libel cases. *Id.* at 281. *See also Eastwood Mall, Inc. v. Slanco*, 68 Ohio St.3d 221, 222 (1994) ("the free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and * * * the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution"), citing *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals*, 63 Ohio St.3d 354, 362-63 (1992). The Supreme Court of Ohio has not extended the additional constitutional protections afforded to opinion defamation cases to any other form of speech. We find no merit in appellant's argument that the Ohio Constitution provides more protection to expressive conduct in the form of choreographed erotic dance simply because it includes the words "restrain or abridge," as opposed to simply the word "abridge." As previously noted, though nude dancing is recognized as a protected form of expressive conduct, "it falls only within the outer ambit of the First Amendment's protection." *34 Jefferson* at ¶ 20, citing *Erie v. Pap's AM.*, 529 U.S. 277, 289 (2000). Accordingly, we hold the free speech guarantees afforded choreographed nude dancing under the Ohio Constitution are no broader than the protections afforded by the First and Fourteenth Amendments to the United States Constitution.

### 3. Impact of *Reed v. Gilbert*

{¶ 30} Appellant contends that the opinion of the United States Supreme Court in *Reed v. Gilbert*, ___ U.S. ___, 135 S.Ct. 2218 (2015), requires this court to conduct a strict scrutiny analysis in determining whether Rule 52 is constitutionally overbroad because under *Reed*, Rule 52 can no longer be considered a content-neutral regulation. We disagree.

{¶ 31} In *Reed*, the Supreme Court addressed the validity of a sign code that banned the display of outdoor signs anywhere in town without a permit but exempted 23 classes of signs from this requirement. *Id.* at 2224. Under the Sign Code, signs that received varying levels of preferential treatment under the code included ideological signs, political signs, and temporary directional signs. *Id.* at 2224-25. Plaintiffs in the case challenged the less preferential treatment given to temporary directional signs. *Id.* at 2224. The Ninth Circuit Court of Appeals determined that the Sign Code was content neutral.[4] That court declared "Gilbert did not adopt its regulation of speech because it disagreed with the message conveyed," and its "interests in regulat[ing] temporary signs [were] unrelated to the content of the sign." *Id.* at 2226.

{¶ 32} The United States Supreme Court reversed the Ninth Circuit, finding the "Sign Code is content based on its face" because the restrictions "depend entirely on the communicative content of the sign." *Id.* at 2227. The court held that a strict scrutiny analysis was appropriate, not intermediate scrutiny, and that it was error to look to the purpose of the Sign Code in determining the level of scrutiny that should be applied. *Id.* at 2228. In *Reed*, the United States Supreme Court instructed "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.*, quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993). "In other words, an innocuous justification cannot transform a facially content-based law into one that is content neutral." *Reed* at 2228.

{¶ 33} Appellant argues that the *Reed* case effectively overrules the secondary-effects doctrine because a court reviewing a claim that a regulation unlawfully restrains or abridges free speech may no longer consider the purpose of the regulation in determining the level of scrutiny that should be applied. We disagree.

{¶ 34} In *Flanigan's Ents. v. Sandy Springs*, 11th Cir. No. 16-14428 (Aug. 14, 2017), the Eleventh Circuit Court of Appeals recently addressed the question whether *Reed* abrogated the secondary-effects doctrine as applied to businesses that offer sexually explicit entertainment. In *Flanigan's*, two adult-oriented businesses challenged city

---

[4] *Reed v. Gilbert*, 707 F.3d 1057, 1072 (9th Cir.2013).

zoning ordinances banning the sale of liquor in establishments that feature nude dancing. The Eleventh Circuit upheld the district court decision granting summary judgment in favor of the city as to the First Amendment claims. In concluding that *Reed* did not abrogate the secondary-effects doctrine, the Eleventh Circuit made the following observations:

> There is no question that *Reed* has called into question the reasoning undergirding the secondary-effects doctrine. The secondary-effects doctrine allows a content-based, adult-entertainment-related law to be subjected to less than strict scrutiny as long as the law can be justified by a legitimate interest in combating the harmful secondary effects of adult entertainment. The majority opinion in *Reed*, of course, rejected the lower court's reliance on the sign code's justification in conducting content-neutrality analysis; the Court also declared that content-based laws should be subjected to strict scrutiny.
>
> But significantly, the majority opinion in *Reed* did not address the secondary-effects doctrine. For this reason alone, we cannot read *Reed* as abrogating either the Supreme Court's or this Circuit's secondary-effects precedents.

*Id. See also Free Speech Coalition, Inc. v. Atty. Gen. United States*, 825 F.3d 149 (3d Cir.2016) (if the secondary-effects doctrine survives *Reed,* case law counsels against expanding its application beyond regulations affecting physical purveyors of adult sexually explicit content); *"Q" Lungian Ents. v. Windsor Locks*, D.Conn. No. 3:13-cv-01285 (Sept. 18, 2017) (declining to conclude that *Reed* repudiates prior decision of the United States Supreme Court applying the secondary-effects doctrine in ruling that the regulation of adult-oriented businesses is content-neutral regulation that warrants the application of intermediate scrutiny).

{¶ 35} Because *Reed* did not expressly abrogate the secondary-effects doctrine as it applies to local government regulation of brick-and-mortar purveyors of adult sexually explicit conduct, this court need not apply a strict scrutiny analysis in determining the constitutionality of Rule 52 under Article I, Section 11 of the Ohio Constitution.[5] Furthermore, because this court has previously determined the provision of Rule 52 at

---

[5] We express no opinion whether Rule 52 would pass muster under the strict scrutiny test.

issue in this case does not violate the First and Fourteenth Amendments of the United States Constitution, either on its face or as applied to adult-oriented establishments, and because Article I, Section 11 of the Ohio Constitution does not provide broader protections to such establishments, we hold that Ohio Adm.Code 4301:1-1-52(B)(2) does not violate Article I, Section 11 of the Ohio Constitution either on its face or as applied to appellant.

{¶ 36} For the foregoing reasons, appellant's first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 37} In appellant's second assignment of error, appellant argues the trial court erred in affirming the commission because the record does not contain substantial, reliable, and probative evidence in support of the commission's decision. More particularly, appellant contends that the evidence in the record does not support a forfeiture order of $100,000.

{¶ 38} Pursuant to R.C. 4301.25(A), "[t]he liquor control commission may suspend or revoke any permit issued under this chapter or Chapter 4303. of the Revised Code for the violation of any * * * lawful rule of the commission." Similarly, R.C. 4301.252 permits the commission to order forfeiture in lieu of revocation. This court has held that, under the relevant statutory language, the commission may revoke a permit based on one violation. If there is reliable, probative, and substantial evidence supporting the order, the court of common pleas has no authority to reverse an order on the basis that the penalty is harsh and an abuse of discretion. *DKA, Inc. v. Liquor Control Comm.*, 10th Dist. No. 03AP-316, 2004-Ohio-837, ¶ 13, citing *Tolbert v. Liquor Control Comm.* (*In re Tolbert*), 10th Dist. No. 98AP-285 (Dec. 3, 1998).

{¶ 39} In *WCI*, appellant challenged the $25,000 forfeiture imposed by the commission for violations of Rule 52 as being unsupported by the evidence. In holding that substantial, reliable, and probative evidence supported the commission's decision, this court noted the following relevant facts:

> WCI did stipulate to certain facts in the investigator's report but the hearing brought to light other facts that support a forfeiture of $25,000 or revocation of the liquor license. (Tr. at 6.) There were cameras that were supposed to be monitoring the private dance rooms. (Tr. at 17.) WCI could not determine what the cameras were supposed to show. Either the cameras were malfunctioning or were not being

> monitored. *Id.* The investigator's report stated that at the end of the private dance the performer led the investigator to a table that was located at the entrance of the private area where she gave another employee an undetermined amount of money. (Public Safety Report at 2.)
>
> The Commission also noted at the hearing that WCI was recently before them for actions that occurred on January 3, 2013 in which WCI's liquor license would have been revoked unless they paid a $10,000 forfeiture. (Tr. at 19.) The evidence indicates that the Commission has required substantial forfeitures from WCI before for similar violations. The Commission chose to impose an increased forfeiture of $25,000 rather than a $10,000 forfeiture that was imposed less than one year before.

*Id.* at ¶ 13-14.

{¶ 40} The facts are similar in this case. Here, as in *WCI*, appellant stipulated to the facts contained in the investigation report. Appellant does not deny one of its dancers appeared in a state of nudity while providing a one-on-one dance for Cesaratto in the club's VIP area. Appellant does not deny such conduct violated Ohio Adm.Code 4301:1-1-52(B)(2) prohibiting appellant from knowingly or willfully allowing dancers to "[a]ppear in a state of nudity." Though the commission found appellant guilty of only one violation, the unrefuted information contained in Cesaratto's investigation report establishes that additional conduct occurred on appellant's premises that arguably supported a finding of further Rule 52 violations. For example, Cesaratto's investigation report establishes that appellant's dancer engaged in the following conduct: repeatedly "straddled his legs, sat on [his] groin and rubbed back and forth simulating a sexual act"; "started gyrating her hips in a circular motion * * * simulating a sexual act"; rubbed her exposed nipple on his lips; rubbed her finger on her clothed anus and vagina; went to her knees in front of Cesaratto and proceeded to rub her lips over his clothed penis while "humming to make a vibrating sensation"; and rubbed her head on his clothed penis. (Sept. 1, 2015 Investigation Report at 1.) After performing these activities during two songs, the dancer asked for $60, which Cesarrato paid. Such conduct is far well beyond simply allowing a dancer to "[a]ppear in a state of nudity," and it involved sexual touching.

{¶ 41} The record also contains evidence appellant has been cited for four Rule 52 violations in the past four years. In addition to the two citations issued by the division arising from the August 2015 investigation, an investigation in February 2015 resulted in two citations, one for nudity and the other for sexual activity. Though the commission did not find appellant guilty of those violations, the fact remains the division cited appellant for similar Rule 52 violations roughly seven months prior to the violation at issue. Additionally, the record shows the division issued citations to appellant for Rule 52 violations on June 14, July 17, and October 24, 2014. Appellant acknowledges the three separate violations were consolidated for purposes of punishment, and appellant paid a forfeiture amount of $10,000 in lieu of revocation.

{¶ 42} In the administrative hearing on the Rule 52 violation arising from the February investigation, appellant maintained it had taken steps following the 2014 violations to educate staff and to increase surveillance of the VIP area to ensure compliance with the relevant regulations. According to appellant's manager, Jadranko Cvetovac, there are real-time cameras monitoring virtually the entire club, including the VIP area, but the cameras do not record. Cvetovac testified that prior to the violations in 2014, a single employee monitored all the cameras from inside the camera room. In response to the chairperson's question regarding any additional measures taken subsequent to the 2014 violations, Cvetovac stated that one additional employee had been assigned to monitor the cameras from an iPad. Our review of the hearing transcript reveals, however, that appellant allows staff monitoring those cameras to receive tips from the dancers for referring customers. Neither of the two employees monitoring the cameras on August 29, 2015, recalled having observed the nudity violation detailed in Cesaratto's investigation report, even though the conduct described in the report occurred over the space of two song tracks.

{¶ 43} Based on the foregoing, we find that substantial, reliable, and probative evidence supports the commission's decision to revoke appellant's liquor permit or, in lieu of revocation, forfeiture. We acknowledge that the $100,000 forfeiture in this case is much steeper than the $10,000 forfeiture previously imposed by the commission for appellant's prior Rule 52 violations and the $25,000 forfeiture imposed by the commission for the Rule 52 violations in *WCI*. However, the decision of the Supreme

Court of Ohio in *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), provides as follows:

> 2. On appeal from an order of an agency (as defined in Section 119.01, Revised Code) to the Court of Common Pleas, the power of the court to modify such order is limited to the ground set forth in Section 119.12, Revised Code, i.e., the absence of a finding that the order is supported by reliable, probative, and substantial evidence.
>
> 3. On such appeal, the Court of Common Pleas has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion.

*Id.* at paragraphs two and three of the syllabus. Followed by *Aida Ents., Inc. v. Liquor Control Comm.*, 10th Dist. No. 01AP-1178, 2002-Ohio-2764, *appeal not allowed*, 96 Ohio St.3d 1533, 2002-Ohio-5351; *Goldfinger Ents., Inc. v. Liquor Control Comm.*, 10th Dist. No. 01AP-1172, 2002-Ohio-2770; *Lindner v. Liquor Control Comm.*, 10th Dist. No. 00AP-1430 (May 31, 2001).

{¶ 44} Appellant acknowledges that *Henry's Cafe* precludes this court from conducting an abuse of discretion analysis in reviewing the sanction imposed by the commission where we find that the commission's order is supported by substantial, reliable, and probative evidence and is in accordance with law. Appellant also acknowledges that the commission had the right to revoke its liquor permit based on a single Rule 52 violation, rather than providing appellant with the option to pay forfeiture. We note that R.C. 4301.252 imposes no monetary limit on the amount of forfeiture in lieu of revocation. Nevertheless, appellant asks this court to review the severity of the forfeiture under the due process and equal protection clauses of the United States and Ohio Constitutions.

{¶ 45} Appellant argues that this court, in reviewing the size of a forfeiture order issued by the commission, should apply the test courts apply when reviewing the validity of punitive damage awards in a civil proceeding. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424

(2001).[6]  Appellant also contends that the forfeiture in this case violates equal protection because the amount of the forfeiture is out of proportion to forfeitures imposed on other similarly situated permit holders for Rule 52 violations.  Appellant asks us to compare the size of the forfeiture in this case to other forfeiture orders issued by the commission.

{¶ 46} In *Lindner*, the commission revoked the permit holder's liquor permit because gambling had occurred on the premises.  The permit holder admitted the violation but appealed to the common pleas court arguing that the sanction was excessive given the fact that the permit holder had no prior violations.  The common pleas court found that substantial, reliable, and probative evidence supported the commission's order.

{¶ 47} In her appeal to this court, the permit holder argued that the penalty of revocation was too severe.  In rejecting appellant's argument, this court made the following observations:

> Having properly found the commission's order was supported by reliable, probative and substantial evidence, the common pleas court had no authority to modify the penalty lawfully imposed by the commission.
>
> * * *
>
> As a practical matter, courts have no power to review penalties meted out by the commission.  Thus, we have little or no ability to review a penalty even if it seems on the surface to be unreasonable or unduly harsh.  Though she had no prior violations, appellant had her liquor license revoked, not suspended for a period of time.  Perhaps the time to reconsider *Henry's Cafe* has arrived, but the Supreme Court of Ohio must be the court to do that reconsideration.  We, as an intermediate appellate court, are required to follow the syllabus of *Henry's Cafe* unless or until such reconsideration occurs.

*Lindner.*

---

[6]In deciding whether an award of punitive damages violates due process, courts have focused on the same three criteria: (1) the degree of the defendant's reprehensibility or culpability; (2) the relationship between the penalty and the harm to the victim caused by the defendant's actions; and (3) the sanctions imposed in other cases for comparable misconduct.  *Gore* at 575-85.

{¶ 48} The Supreme Court of Ohio has not reconsidered the rule of law set forth in *Henry's Cafe*. Appellant's due process and equal protection arguments in this case are a thinly veiled attempt to circumvent the holding of the Supreme Court in *Henry's Cafe*. As an intermediate appellate court, this court is required to follow the syllabus of *Henry's Cafe* unless or until such reconsideration occurs. *Lindner.* Accordingly, we find that appellant's due process and equal protection challenges to the amount of the forfeiture are without merit.

{¶ 49} Because we have found that the trial court did not abuse its discretion when it determined that the commission's order was supported by substantial, reliable, and probative evidence and because the commission's order is in accordance with law, we overrule appellant's second assignment of error.

### C. Third Assignment of Error

{¶ 50} In appellant's third assignment of error, appellant argues the trial court erred by denying appellant's motion to supplement the administrative record with evidence in support of its contention that Rule 52 is unconstitutionally overbroad. More particularly, appellant sought leave to submit evidence there are approximately 2,400 permit holders in Ohio and only about 1 percent of those permit holders operate adult-oriented businesses. According to appellant, some of those permit holders include theaters and opera houses that occasionally feature performances containing nudity. Appellant argues Rule 52 might be impermissibly applied to suppress speech of great artistic merit.

{¶ 51} This is precisely the argument this court considered and rejected in *34 Jefferson*. As we previously noted in *34 Jefferson*, "the Supreme Court has vigorously enforced the requirement that a statute's overbreadth be substantial, * * * and cautioned that invalidation for overbreadth be deployed sparingly and only as a last resort. * * * [O]nly if a plaintiff demonstrates from the text of the statute and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally, is facial invalidation on overbreadth grounds appropriate." (Internal citations and quotations omitted.) *Id*. at ¶ 29. In *34 Jefferson*, this court agreed with the commission that the "ability to conceive of arguably impermissible applications of the rule or statute to

constitutionally protected expression does not amount to real or substantial overbreadth." *Id.* at ¶ 31.

{¶ 52} For the reasons set forth in *34 Jefferson*, we hold the trial court did not err when it denied appellant's motion to supplement the administrative record. Accordingly, appellant's third assignment of error is overruled.

## V. CONCLUSION

{¶ 53} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.

_____